FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 14, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LUKE S.,[1] | No. 4:20-cv-05086-MKD |
| Plaintiff, | |
| | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 19, 21 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 19, 21. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 19, and denies Defendant's motion, ECF No. 21.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On June 9, 2017, Plaintiff applied for Title II disability insurance benefits and subsequently applied for Title XVI supplemental security income benefits on August 7, 2017 alleging a disability onset date of September 1, 2015. Tr. 15, 84, 96, 197-200, 202-11. The applications were denied initially and on reconsideration. Tr. 119-21, 125-37. Plaintiff appeared before an administrative

law judge (ALJ) on June 14, 2019. Tr. 34-83. On July 2, 2019, the ALJ denied Plaintiff's claim. Tr. 12-33.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through March 31, 2020, has not engaged in substantial gainful activity since September 1, 2015. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: post-traumatic arthritis in bilateral hips status post left hip replacement and lumbar degenerative disc disease. *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19. The ALJ then concluded that Plaintiff has the RFC to perform a full range of sedentary work with the following limitations:

> [Plaintiff] can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs; he can frequently perform all other postural activities; and he needs an option to stand and stretch at his work station for one to two minutes after every hour of sitting.

Tr. 20.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 25. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, document preparer, dowel inspector, and food and

ORDER - 7

beverage order clerk.  Tr. 26.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of September 1, 2015, through the date of the decision.  Tr. 27.

On April 9, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.  Whether the ALJ properly evaluated the medical opinion evidence;

3.  Whether the ALJ conducted a proper step-three analysis; and

4.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 19 at 3-4.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 19 at 6-19.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 21.

*1.  Activities of Daily Living*

The ALJ found Plaintiff's symptom claims were inconsistent with his activities of daily living.  Tr. 22-23.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

The ALJ noted that Plaintiff reported he is able to engage in a number of independent activities of daily living.  Tr. 22-23.  However, in relying on Plaintiff's reported activities to reject Plaintiff's claims, the ALJ significantly overstated Plaintiff's activities.  The ALJ noted that Plaintiff testified to the fact he is able to walk to and from the bus stop, which is between one and two blocks away, three to four times a week.  Tr. 22.  However, Plaintiff testified that it would take him six minutes to walk only two to three blocks, and he would need to rest

for 10 minutes before he could walk another two to three blocks.  Tr. 64.  The ALJ

noted Plaintiff reported he goes to the park, and when he does, he can walk on

grass at the park for a distance of about one block.  Tr. 22.  The ALJ stated

Plaintiff acknowledged he can walk on the grass "i.e., rough, uneven terrain."  *Id.*

However, the ALJ overstates Plaintiff's reports; Plaintiff reported he can walk on

grass, but did not say he can walk on rough, uneven terrain.  Tr. 64-66.  Plaintiff

testified he rarely goes to the park, and when he does, he walks most of the

distance on a sidewalk, and walks on a "flat" area with grass, and when the grass

gets too long, he has a hard time walking on it.  Tr. 64-66.  Plaintiff testified if he

tried to walk a "short block" distance on grass, it would take around five minutes.

Tr. 67.  Plaintiff takes the bus to go shopping and is able to shop independently

with the use of a pushcart.  Tr. 22, 268.  However, Plaintiff's mother noted

Plaintiff sometimes has someone else shop for him, and stated Plaintiff cannot

"walk much in a store."  Tr. 277.  In addition to shopping and taking public

transportation, the ALJ noted Plaintiff reported he was able to prepare his own

meals, do laundry, wash dishes, vacuum, go to church, and visit the park.  Tr. 23

(citing Tr. 298-300).  However, Plaintiff reported his mother sometimes prepares

dinner, and he only prepares simple meals like sandwiches, frozen dinners, and

snacks, Tr. 297-98, he reported handling a few chores per day before relaxing the

entire evening, Tr. 297, and he reported going to church only once every other week, Tr. 300.

The ALJ also noted Plaintiff's ability to weed whack was inconsistent with his allegations. Tr. 23. Here, the ALJ again overstated Plaintiff's activity level. Plaintiff reported that he is not able to "do much yard work" as it is "too hard on [his] body." Tr. 299. The ALJ noted that Plaintiff was able to weed whack his yard for four hours in April 2017, Tr. 21, 23 (citing Tr. 410-11), which was only shortly after stating he could do limited yard work. *See* Tr. 299, 303. Plaintiff argues that the ALJ relied too heavily on the weed whacking activity as Plaintiff would only actually "weed whack for 15 minutes at a time and then take a break." ECF No. 19 at 9. A single incident of Plaintiff using a weed whacker is not sufficient reason to reject Plaintiff's symptom claims as inconsistent with his activities. Further, Plaintiff testified that he would not have been capable of weed whacking for four consecutive hours, and that he took several breaks. Tr. 73. Plaintiff indicated he was sore after the work, Tr. 411, and he testified that he could "barely walk" when he was done, Tr. 76. The ALJ failed to consider the breaks Plaintiff took while weed whacking, and the pain it caused. Additionally, when the medical expert was questioned about Plaintiff's ability to weed whack on one occasion, the expert testified he did not believe weed whacking was inconsistent with the inability to ambulate effectively, as it does not require

ORDER - 13

significant exertion in terms of the gait, rather it requires shuffling slightly while weed whacking, and you can take breaks. Tr. 48-49. The ALJ's finding that Plaintiff's activities of daily living were inconsistent with his symptom claims is not supported by substantial evidence.

### 2. Inconsistent Statements

The ALJ found Plaintiff made inconsistent statements regarding his symptoms and resulting limitations. Tr. 23. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."). Moreover, evidence that the claimant was motivated by secondary gain is sufficient to support an ALJ's rejection of testimony. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Therefore, the tendency to exaggerate or engage in manipulative conduct during the administrative process is a permissible reason to discount the credibility of the claimant's reported symptoms. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Here, Plaintiff argues that the ALJ failed to make specific findings as to the inconsistencies. ECF No. 19 at 7. The ALJ pointed to evidence such as Plaintiff's ability to walk two to three blocks as being inconsistent with Plaintiff's allegations. Tr. 24 (citing Tr. 504). However, Plaintiff has consistently reported he is able to walk only two to three blocks before needing to rest. Tr. 64, 270, 504. The ALJ notes Plaintiff was able to walk without an assistive device, Tr. 23, however Plaintiff has consistently reported he does not need an assistive device, Tr. 271, 504, except to help with stairs, Tr. 302. The ALJ also noted Plaintiff reported his pain was well-controlled at a November 2017 appointment. Tr. 23 (citing Tr. 583). At that appointment, Plaintiff's current medications were gabapentin, ibuprofen, Tylenol extra strength, and tramadol, and even with multiple pain medications, Plaintiff still rated his pain as a four, and the notes state Plaintiff "walks with significantly abnormal gait but without assist device." Tr. 583. The ALJ also pointed to a May 2018 visit where Plaintiff was doing well and ambulating without an assistive device, Tr. 23 (citing Tr. 533), however Plaintiff was six weeks post-surgery on his left hip, and he was noted as still having "severe right hip arthritis which alters his walk," and the plan states Plaintiff would be actively healing for six months and overall recovery is nine to 12 months. Tr. 533-34. Plaintiff's provider agreed with the plan for Plaintiff to wait one year after recovering from his left hip surgery before having the right hip surgery. Tr. 534. The ALJ also

noted Plaintiff admitted he could likely do sedentary work, Tr. 22, although Plaintiff stated it is a "possibility within range" that he could perform sedentary work, and noted he would have back pain, would need to stand up and move, and also noted he has worsening symptoms during the winter that may impact his ability to work. Tr. 73. When asked if he could sit for six to eight hours for a full-time job, Plaintiff testified the most he has done is a four-hour increment and he is in pain at the end of four hours, Tr. 75. While the ALJ found Plaintiff made inconsistent statements about his symptoms/limitations, the ALJ did not identify what statements the reports are inconsistent with. The ALJ's finding that Plaintiff made inconsistent statements about his limitations is not supported by substantial evidence.

### 3. Personal Observations of the ALJ

The ALJ also found Plaintiff's symptom testimony inconsistent with his observations at the hearing. Tr. 22. An ALJ's reliance on their personal observations of a claimant at the hearing has been condemned as "sit and squirm" jurisprudence. *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (citation omitted). The practice has generally been met with disapproval and may not form

the sole basis for discounting a claimant's symptom claims. *Orn v. Astrue*, 495

F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ specifically noted that, although Plaintiff walked with a limp

into the hearing, "it was much more consistent with the mild-moderately impaired

gait noted by his surgeon" than other more severe ratings. Tr. 22. As this Court

finds the ALJ's other reasons for rejecting Plaintiff's symptom claims are not

supported by substantial evidence, the ALJ's observations of Plaintiff's gait is not

a sufficient basis for discounting Plaintiff's symptom claims. As such, the ALJ

erred in relying on his own observations to reject Plaintiff's claims.

*4. Non-Compliance with Treatment*

The ALJ found Plaintiff had been non-compliant with his treatment. Tr. 23.

"[I]n order to get benefits, an individual must follow treatment prescribed by his or

her physician if the treatment can restore the ability to work, unless the individual

has an acceptable reason for failing to follow the prescribed treatment." *Orn*, 495

F.3d at 636-37. "A claimant's subjective symptom testimony may be undermined

by an unexplained, or inadequately explained, failure to . . . follow a prescribed

course of treatment." *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017)

(citations omitted). Social Security Ruling 16-3p instructs that an ALJ "will not

find an individual's symptoms inconsistent with the evidence in the record on this

basis without considering possible reasons he or she may not comply with

treatment or seek treatment consistent with the degree of his or her complaints."

SSR 16-3p, 2016 WL 1119029, at *8.  Acceptable reasons for failing to follow

prescribed treatment include the treatment being contrary to the claimant's

religion, the fact that similar treatment has been tried in the past with unsuccessful

results, the recommended treatment being of great magnitude or unusual nature, or

that the treatment would involve amputation of an extremity.  20 C.F.R. §§

404.1530, 416.930.

The ALJ identified several instances in which Plaintiff was allegedly non-

compliant with treatment.  Tr. 23.  First, the ALJ found Plaintiff did not follow up

with his orthopedist after surgery on his left hip, and "he had no reasonable excuse

for failing to follow up to pursue right hip surgery."  Tr. 23.  However, Plaintiff's

provider planned for Plaintiff to wait 12 months after his April 2018 surgery before

having the second hip surgery.  Tr. 53, 534.  At the time of the hearing, Plaintiff

was 15 months passed his first surgery, and offered two reasons as to why he had

not yet met with his surgeon; first, Plaintiff was incarcerated for a period of time,

and second, he was coping with substance addiction.  Tr. 55-58.  Plaintiff testified

he contacted the surgeon's office to notify them why he had missed the last

appointment, and he was waiting to be rescheduled for an appointment.  Tr. 56-57.

Additionally, Plaintiff was referred to participate in physical therapy, Tr. 404, but

it was discontinued after five sessions when insurance withdrew payments, Tr.

428, and Plaintiff reported it was not helping his pain, Tr. 21, 438.  The ALJ noted

Plaintiff did not try massage therapy, acupuncture, nor TENS treatment, however

the ALJ does not point to any evidence that a provider recommended Plaintiff try

any such treatment, Tr. 23, nor did the ALJ inquire as to whether Plaintiff has the

ability to get such treatment covered by insurance or otherwise pay for the

treatment out of pocket.  There is no indication in the record that any provider

suggested such treatments were appropriate for his condition.  The ALJ's finding

that Plaintiff was non-compliant with treatment is not supported by substantial

evidence.

### 5. Treatment—Conservative Level

The ALJ found Plaintiff had pursued a conservative course of treatment and

thus afforded less weight to his symptom testimony.  Tr. 23.  Evidence of

"conservative treatment" is sufficient to discount a claimant's testimony regarding

the severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007)

(citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments

with an over-the-counter pain medication is evidence of conservative treatment

sufficient to discount a claimant's testimony regarding the severity of an

impairment)); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)

(holding that the ALJ permissibly inferred that the claimant's "pain was not as all-

disabling as he reported in light of the fact that he did not seek an aggressive

ORDER - 19

treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

While the ALJ found Plaintiff pursued a conservative course of treatment, Plaintiff underwent a total left hip conversion, and at the time of the hearing, Plaintiff needed right hip surgery and was working on scheduling an appointment to pursue the surgery. Tr. 22-23, 56-57. While the ALJ noted Plaintiff did not pursue other forms of treatment, such as acupuncture, Tr. 23, there is no evidence such treatment was recommended, as discussed *supra*. Plaintiff previously managed his pain with opiate medication, but was no longer able to due to an addiction. Tr. 438. The ALJ's finding that Plaintiff pursued conservative treatment is not supported by substantial evidence.

### 6. *Inconsistent Objective Medical Evidence*

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence. Tr. 21-22. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601; *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or

other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ found the medical evidence was not consistent with Plaintiff's symptom testimony. Tr. 22-23. The ALJ noted that "[a]lthough the objective medical evidence and clinical observations show significant pathology, the clinical evidence is less remarkable." Tr. 22. The ALJ noted Plaintiff walked with a mild to moderate limp, but did not use an assistive device, and he appeared in no distress and only mild pain at several appointments. *Id.* However, several medical providers have indicated that there is severe pathology in Plaintiff's hips. Tr. 580 (indicating that Plaintiff has "[s]evere right hip osteoarthritis with joint space, bone-on-bone appearance, marked remodeling of the femoral head acetabulum."); Tr. 515 (remarking that Plaintiff suffered from "[e]nd-stage degenerative arthritis of" both hips). The medical expert testified that Plaintiff had a "very serious ski accident," which resulted in advanced arthritis, and several related issues including dislocation of the right hip. Tr. 40-41. Multiple providers observed Plaintiff as having an antalgic gait, including observations of the gait being "significantly abnormal" and Plaintiff having "significant loss of bilateral range of motion in his hips in every direction." Tr. 400, 405, 408, 440, 450. The ALJ's finding that

Plaintiff's symptom claims are inconsistent with the objective evidence is not supported by substantial evidence.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in weighing the opinions of James McKenna, M.D., and Brent Packer, M.D.  ECF No. 19 at 10-13.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to

support or contradict a medical opinion or prior administrative medical finding"

(including, but not limited to, "evidence showing a medical source has familiarity

with the other evidence in the claim or an understanding of our disability

program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-

(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in

the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence
> and supporting explanations presented by a medical source are to
> support his or her medical opinion(s) or prior administrative medical
> finding(s), the more persuasive the medical opinions or prior
> administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior
> administrative medical finding(s) is with the evidence from other
> medical sources and nonmedical sources in the claim, the more
> persuasive the medical opinion(s) or prior administrative medical
> finding(s) will be.

20 C.F.R. §§ 404.1520cI(1)-(2), 416.920cI(1)-(2).  The ALJ may, but is not

required to, explain how the other factors were considered.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).[3]  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-

---

[3] The parties disagree over whether Ninth Circuit case law continues to be controlling in light of the amended regulations. ECF No. 19, ECF No. 21, ECF No. 22.  The Court finds resolution of this question unnecessary to the disposition of this case.  "It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of [an] ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards." *Allen T. v. Saul*, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *3 (W.D. Wash. Apr. 9, 2020)). "Nevertheless, the Court is mindful that it must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction 'follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.'" *Allen T.,* at *3 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005);  *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993) ("New regulations at variance with

ORDER - 24

supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

### 1. Dr. McKenna

On June 14, 2019, Dr. McKenna, a testifying medical expert, provided an opinion on Plaintiff's condition. Tr. 39. Dr. McKenna reviewed Plaintiff's medical records contained in the record. *Id*. Dr. McKenna stated that Plaintiff suffered from a number of conditions stemming from injuries sustained in a ski accident in 2004. Tr. 40. Although Dr. McKenna opined Plaintiff was lucky to get 13 years of use from his repaired hips, he noted he had a total hip replacement in 2018. Tr. 40, 42. Among the conditions Plaintiff currently has, Dr. McKenna listed "non-displaced left superior inferior pubic rami fractures," "right hip dysplasia," and "exotropic calcification" which prevents his hip from sitting in its socket. Tr. 40-41. Dr. McKenna testified that the osteoarthritis "clearly did not develop overnight" and asserted he was comfortable with the concept of retroactivity in this case. Tr. 45. Dr. McKenna opined that Plaintiff "has a limp

_____

prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and capricious.'").

gait—an asymmetrical gait because of [his] dislocated right hip." Tr. 42.

Ultimately, Dr. McKenna testified that Plaintiff was in desperate need of a right

hip replacement and that he, without a "shadow of a doubt," met Listing 1.02A due

to his inability to ambulate effectively or walk a block with reasonable speed. Tr.

42-43. The ALJ found the opinion unpersuasive. Tr. 24.

First, the ALJ found Dr. McKenna's opinion was not consistent with the

objective evidence. Tr. 24. Consistency is one of the most important factors an

ALJ must consider when determining how persuasive a medical opinion is. 20

C.F.R. §§ 404.1520c(b)(2) 416.920c(b)(2). The more consistent an opinion is with

the evidence from other sources, the more persuasive the opinion is. 20 C.F.R. §§

404.1520c(c)(2), 416.920c(c)(2). Specifically, the ALJ noted that the medical

evidence did not demonstrate Plaintiff could not effectively ambulate, relying on

the facts that Plaintiff "reported spending four hours weed-whacking his backyard,

and, while he had an antalgic gait, he did not require the use of an assistance

device." Tr. 24, 411, 464, 504. However, as discussed *supra,* the ALJ overstated

Plaintiff's activities, including the weed whacking. Further, ineffective ambulation

does not require the use of an assistive device, and Dr. McKenna did not opine

Plaintiff needs an assistive device; rather, Dr. McKenna testified Plaintiff's hip

impairments prevented Plaintiff from being able to walk a block at a reasonable

ORDER - 26

pace over rough and uneven surfaces.  Tr. 43; 20 C.F.R. pt. 404, Subpt. P., app. 1, § 1.00B2b (May 21, 2020).[4]

Dr. McKenna provided a thorough explanation as to why he believed Plaintiff is unable to ambulate effectively.  Dr. McKenna testified there is "no way" Plaintiff could walk normally with a dislocated hip.  Tr. 43.  While Plaintiff was able to walk two to three blocks, Dr. McKenna noted the records generally do not discuss the pace Plaintiff is able to walk.  Tr. 46.  Plaintiff is only able to walk upstairs one stair at a time while holding the railing.  Tr. 47.  The ALJ asked Dr. McKenna about medical records that indicated Plaintiff had only a mild to moderately impaired gait, and a record indicating Pla intiff used a weed whacker for four hours, and Dr. McKenna stated the records did not change his opinion; he opined Plaintiff's impairment is chronic, and despite Plaintiff's ability to adapt to the impairment and perform some tasks, Dr. McKenna opined it is a "very crippling disease."  Tr. 44-49.  Dr. McKenna noted that weed whacking does not require much exertion in terms of the gait, and the ability to weed whack is not necessarily inconsistent with the disabling limitations.  Tr. 48-49.  The ALJ's

---

[4] As of April 2, 2021, Listing 1.02 was removed and replaced with Listing 1.18. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (April 2, 2021).  The Court applies the Listing that was in effect at the time of the ALJ's decision.

finding that Dr. McKenna's opinion is inconsistent with the objective evidence is not supported by substantial evidence.

Second, the ALJ noted Dr. McKenna failed to reconcile his opinion with Plaintiff's own reports of his abilities to walk or perform chores. Tr. 24. Consistency is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). As discussed *supra,* the ALJ overstated Plaintiff's activities. Plaintiff testified that he took several breaks while weed whacking, and he was barely able to walk when he had finished. Tr. 76-77. Plaintiff reported he can only walk two to three blocks before needing to stop and rest, and he has a very hard time walking on stairs. Tr. 270. Plaintiff testified that he rarely goes to the park, and the last time he went, he was given a ride to the park, and when he arrived he was able to walk on a sidewalk and then on flat ground that had short grass to get to a bench to sit. Tr. 63-66. Plaintiff testified that if the grass is too long, he has a hard time walking on it. Tr. 66. Plaintiff testified he is given a ride to the grocery store, and uses a pushcart or motorized cart to get around the store. Tr. 72. Plaintiff's reported ability to engage in some tasks, such as preparing a sandwich, frozen food, or a complete meal once per week, Tr. 267, is not inconsistent with

ORDER - 28

Dr. McKenna's opinion. The ALJ's finding that Dr. McKenna's opinion is inconsistent with Plaintiff's reported abilities is not supported by substantial evidence.

Third, the ALJ found Dr. McKenna's opinion was less persuasive than the opinion of Alnoor Virji, MD., because Dr. Virji's opinion was more consistent with other opinions and more supported by the evidence in the record. Tr. 24. "Consistency and supportability are the two most important factors when considering the persuasiveness of medical opinions." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Here, the ALJ noted that Dr. Virji believed Plaintiff was capable of performing sedentary work, in accordance with others who reviewed and treated Plaintiff. Tr. 24 (citing Tr. 104-05, 115-16). In contrast, as discussed *supra*, the ALJ found Dr. McKenna's opinion was inconsistent with the record. However, for the reasons discussed *supra,* the ALJ's finding that Dr. McKenna's opinion was inconsistent with the objective evidence and Plaintiff's functioning is not supported by substantial evidence. As such, the ALJ's finding that Dr. Virji's opinion is more consistent with the record than Dr. McKenna's opinion is not supported by substantial evidence.

*2. Dr. Packer*

On April 26, 2017, Dr. Packer, a reviewing physician,[5] provided an opinion on Plaintiff's condition. Tr. 393-94. Dr. Packer opined Plaintiff was able to walk less than one block and that Plaintiff met listing "1.02A due to bilateral hip and spine involvement." Tr. 393. Dr. Packer additionally opined that Plaintiff's severity rating should be raised to a five from a four for his chronic pain syndrome due to "atrophy, weakness and pain that are residual to bilateral hip and L3 fractures/injuries with incomplete treatment." Tr. 392-93. Finally, Dr. Packer opined that the condition would persist for 12 months and the onset date was

---

[5] Although Plaintiff argues Dr. Packer was an examining medical expert, ECF No. 19 at 13, there is no indication that Dr. Packer actually examined the Plaintiff. The ALJ and the Defendant indicated Dr. Packer was only a reviewing physician. Tr. 25 (ALJ noting Dr. Packer as a "reviewing DSHS physician"); ECF No. 21 at 15 (identifying Dr. Packer as a "non-examining physician"). Dr. Packer completed a questionnaire, but there is not an attached record of an examination, Tr. 390-94; as such, Dr. Packer appears to be a reviewing source rather than an examining source.

consistent with the medical record. Tr. 393-94. The ALJ found Dr. Packer's

opinion was not persuasive because it was not consistent with the record. Tr. 25.

The ALJ found that Dr. Packer's opinion was inconsistent with medical

evidence that Plaintiff was able to ambulate effectively. Tr. 25. Consistency is

one of the most important factors an ALJ must consider when determining how

persuasive a medical opinion is. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The more consistent an opinion is with the evidence from other sources, the more

persuasive the opinion is. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ

found Plaintiff's ability to weed whack and to walk without an assistive device was

inconsistent with Dr. Packer's opinion. Tr. 25. As discussed *supra,* the ALJ

overstated Plaintiff's activities. The Plaintiff's ability to use a weed whacker on a

single occasion, during which he took multiple breaks, is not inconsistent with the

opinion. Further, as discussed *supra,* the use of an assistive device is not required

to meet Listing 1.02 and thus the lack of an assistive device is not inconsistent with

the opinion. The ALJ's finding that Dr. Packer's opinion is inconsistent with the

medical evidence is not supported by substantial evidence.

**C. Step-Three**

Plaintiff argues the ALJ erred in failing to find Plaintiff's post-traumatic

arthritis in bilateral hips post left hip replacement met or equaled Listing 1.02A.

ECF No. 19 at 13-15. At step three, the ALJ must determine if a claimant's

impairments meet or equal a listed impairment.  20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii).  The Listing of Impairments "describes for each of the major

body systems impairments [which are considered] severe enough to prevent an

individual from doing any gainful activity, regardless of his or her age, education

or work experience."  20 C.F.R. §§ 404.1525, 416.925.  "Listed impairments are

purposefully set at a high level of severity because 'the listings were designed to

operate as a presumption of disability that makes further inquiry unnecessary.'"

*Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*,

493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because

they automatically end the five-step inquiry, before residual functional capacity is

even considered."  *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed

criteria for disability, she will be found to be disabled.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).

   "To *meet* a listed impairment, a claimant must establish that he or she meets

each characteristic of a listed impairment relevant to his or her claim."  *Tackett,*

180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 404.1525(d), 416.925(d).

"To *equal* a listed impairment, a claimant must establish symptoms, signs and

laboratory findings 'at least equal in severity and duration' to the characteristics of

a relevant listed impairment . . . ."  *Tackett*, 180 F.3d at 1099 (emphasis in original)

(quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).  "If a claimant suffers

from multiple impairments and none of them individually meets or equals a listed

impairment, the collective symptoms, signs and laboratory findings of all of the

claimant's impairments will be evaluated to determine whether they meet or equal

the characteristics of any relevant listed impairment." *Id.*  However, "'[m]edical

equivalence must be based on medical findings," and "[a] generalized assertion of

functional problems is not enough to establish disability at step three.'" *Id.* at 1100

(quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing his impairment (or

combination of impairments) meets or equals the criteria of a listed impairment.

*Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's

articulation of the reason(s) why the individual is or is not disabled at a later step in

the sequential evaluation process will provide rationale that is sufficient for a

subsequent reviewer or court to determine the basis for the finding about medical

equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at

*4 (effective March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of

impairments did not meet or equal listing 1.02A.  Tr. 19.  Listing 1.02A is

"[c]haracterized by gross anatomical deformity . . . and chronic joint pain and

stiffness with signs of limitation of motion or other abnormal motion of the

affected joint(s), and findings on appropriate medically acceptable imaging of joint

space narrowing, bony destruction, or ankylosis of the affected joints" and

"[i]nvolvement of one major peripheral weight-bearing joint … resulting in

inability to ambulate effectively."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02A.

Listing 1.00B2b defines the ability to ambulate effectively as:

> (12) Definition.  Inability to ambulate effectively means an extreme limitation of
> the ability to walk; i.e., an impairment(s) that interferes very seriously with the
> individual's ability to independently initiate, sustain, or complete activities.
> Ineffective ambulation is defined generally as having insufficient lower
> extremity functioning (see 1.00J) to permit independent ambulation without the
> use of a hand-held assistive device(s) that limits the functioning of both upper
> extremities.
> 
> . . .
> 
> (2) To ambulate effectively, individuals must be capable of sustaining a
> reasonable walking pace over a sufficient distance to be able to carry out
> activities of daily living.  They must have the ability to travel without
> companion assistance to and from a place of employment or school.
> Therefore, examples of ineffective ambulation include, but are not limited
> to, the inability to walk without the use of a walker, two crutches or two
> canes, the inability to walk a block at a reasonable pace on rough or uneven
> surfaces, the inability to use standard public transportation, the inability to
> carry out routine ambulatory activities, such as shopping and banking, and
> the inability to climb a few steps at a reasonable pace with the use of a single
> hand rail.  The ability to walk independently about one's home without the
> use of assistive devices does not, in and of itself, constitute effective
> ambulation.

20 C.F.R. pt. 404, Subpt. P., app. 1, § 1.00B2b.

The ALJ found Plaintiff does not meet or equal Listing 1.02A because

Plaintiff's impairment has not led to his inability to ambulate effectively.  Tr. 19.

Specifically, the ALJ noted Plaintiff "has not required the ongoing use of an

assistive device that limited functioning of both upper extremities," nor have his

ORDER - 34

impairments impacted his ability to perform to perform fine and gross movements as there is "not an extreme loss of functioning in both upper extremities." *Id*. However, as discussed herein*,* the ALJ erred in rejecting the opinions of Dr. McKenna and Dr. Packer, both of whom opined Plaintiff meets a listing, and the ALJ erred in rejecting Plaintiff's symptom claims. Dr. McKenna testified that imaging of Plaintiff's hips demonstrated "profoundly advanced disease," and that Plaintiff is unable to ambulate effectively. Tr. 106-08. The ALJ erred in failing to find Plaintiff meets Listing 1.02.

### D. Step-Five

Plaintiff argues the ALJ erred at step five. ECF No. 19 at 16-18. Specifically, Plaintiff argues that the ALJ's failure to consider Plaintiff's symptom testimony and opinions of Drs. McKenna and Packer caused the ALJ to rely upon an RFC and hypothetical that failed to include all of Plaintiff's limitations, including his inability to maintain pace, the need for additional breaks, differences in absenteeism standards, and the need to stand, stretch, and walk after sitting for extended periods of time. *Id*. at 16-17. As the case is being remanded for immediate benefits on other grounds, the Court declines to address this issue.

### E. Remedy

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 19 at 18. "The decision whether to remand a case for additional

evidence, or simply to award benefits is within the discretion of the court."
*Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact,

disabled." *Garrison*, 759 F.3d at 1021. Here, the Court finds that each of the credit-as-true factors is satisfied and that remand for the calculation and award of benefits is warranted.

As to the first element, administrative proceedings are generally useful where the record "has [not] been fully developed," *Garrison*, 759 F.3d at 1020, there is a need to resolve conflicts and ambiguities, *Andrews*, 53 F.3d at 1039, or the "presentation of further evidence ... may well prove enlightening" in light of the passage of time, *I.N.S. v. Ventura*, 537 U.S. 12, 18 (2002), *Cf. Nguyen v. Chater*, 100 F.3d 1462, 1466-67 (9th Cir. 1996) (remanding for ALJ to apply correct legal standard, to hear any additional evidence, and resolve any remaining conflicts); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (same); *Dodrill*, 12 F.3d at 918, 919 (9th Cir. 1993) (same); *Bunnell*, 947 F.2d at 348 (en banc) (same). Here, multiple medical providers opined Plaintiff is disabled, and there is sufficient evidence to demonstrate Plaintiff meets Listing 1.02A. Dr. McKenna testified that he was comfortable with considering the concept of retroactivity in this case, given evidence of end stage disease in April 2017. Tr. 41. Dr. McKenna testified that there is "[n]o shadow of doubt" that Plaintiff has a listing level impairment. Tr. 43. When the ALJ indicated there was evidence he thought was inconsistent with Plaintiff meeting a listing, such as references to Plaintiff being able to walk normally, Dr. McKenna testified, "there's no way he could walk normally with the

dislocated hip." Tr. 43-44. Dr. McKenna also noted that despite references to Plaintiff walking, there is not references to his pace, Tr. 46, and stated there is a difference between walking in an office and walking at a reasonable pace for a block over rough/uneven terrain, Tr. 43. When asked about Plaintiff's ability to weed whack, Dr. McKenna stated it is not known what the landscape was like, nor whether Plaintiff took breaks, and that the task does not require much gait exertion. Tr. 48-50. Dr. McKenna testified that despite the evidence pointed to by the ALJ, such as the weed whacking, it did not change his mind that Plaintiff meets Listing 1.02A. Tr. 50-51. Given the evidence in file, particularly Dr. McKenna's testimony, the Court finds the record is fully developed, and any ambiguities in the record regarding Plaintiff's ability to ambulate have been resolved, and further proceedings would not serve a useful purpose.

As discussed *supra*, the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, to reject the opinions of Dr. McKenna, Dr. Packer, and Plaintiff's symptom claims. Therefore, the second prong of the credit-as-true rule is met. The third prong of the credit-as-true rule is satisfied because if Dr. Packer's opinion was credited as true, the ALJ would be required to find Plaintiff disabled from April 6, 2017 through April 6, 2018. If Dr. McKenna's opinion or Plaintiff's statements were credited as true, the ALJ would be required to find Plaintiff disabled for the entire relevant period.

Finally, the record as a whole does not leave serious doubt as to whether Plaintiff is disabled. *See Garrison*, 759 F.3d at 1021. While there are records that mention Plaintiff had some ability to ambulate, Dr. McKenna explained that the records were not necessarily inconsistent with his opinion and that despite the references to Plaintiff walking or using a weed whacker, he still believed Plaintiff met a listing. While there are other nondisabling opinions in file, these opinions do not cast doubt as to whether Plaintiff is disabled, given the strength and thoroughness of Dr. McKenna's opinion.

Moreover, the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler*, 775 F.3d at 1100 (internal citations omitted). In *Vasquez*, the Ninth Circuit exercised its discretion and applied the "credit as true" doctrine because of Claimant's advanced age and "severe delay" of seven years in her application. *Vasquez*, 572 F.3d at 593-94. Here, Plaintiff applied for benefits in June 2017, and has waited four years for benefits. Considering the delay from the date of the application, and the record that supports a finding that Plaintiff is living with a "very severe disease" that meets Listing 1.02A, Tr. 41-51, it is appropriate in this case for this Court to use its discretion and apply the "credit as true" doctrine pursuant to Ninth Circuit precedent.

# CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED July 14, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE